IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
———————————————————————————

UNITED STATES OF AMERICA,

          v.                                      09-CR-170-V

STEVE JABAR AND DEBORAH BOWERS,

                       Defendant.
———————————————————————————

## GOVERNMENT'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO QUASH SUBPOENAS

The United States of America, by and through its attorney, William J. Hochul, Jr., United States Attorney for the Western District of New York, Assistant United States Attorneys Marie P. Grisanti and MaryEllen Kresse, of counsel, files this memorandum of law in support of its motion to quash the subpoenas, pursuant to Fed. R. Crim. P. 17(c)(2), served by the defendants on the Terrorist Screening Center ("TSC") and the Federal Bureau of Investigation ("FBI"). The subpoenas should be quashed because they do not comply with applicable Federal statutes and regulations, they seek to circumvent the rules of discovery authorized by the Federal Rules of Criminal Procedure and the Jencks Act, they lack specificity and they constitute a fishing expedition for items the defense is not entitled to receive. Finally, some of the information sought is classified and cannot be produced pursuant to 28 C.F.R. 16.26(b)(3).

## FACTUAL BACKGROUND

Defendants, Steve S. Jabar and Deborah Bowers, were charged in a Fourteen Count Indictment on May 21, 2008, with violations of Title 18, United States Code, Sections 371 (Conspiracy), 1343 (Fraud By Wire), 1957(a)  (Money Laundering), and 1001(a)(2) (False

Statements). (Docket #1). All the counts are related to a scheme to defraud the United Nations (U.N.) involving money received pursuant to a U.N. grant.

On May 23, 2016, the eve of trial, the Clerk of the Court authorized the defense to issue these subpoenas. At that time, the trial was scheduled to commence on June 6, 2016.[1] The defense served these subpoenas on the Federal Bureau of Investigation (FBI) in Washington D.C. and the Terrorist Screening Center (TSC) at FBI Headquarters in Washington D.C. on or about June 2, 2016.

On or about June 3, 2016, defendant Bower's attorney, Mark Mahoney, spoke to Mary Pat Fleming, Chief of the Civil Division of the United States Attorney's Office (USAO), and because the trial had been adjourned until August 2, 2016, Mr. Mahoney agreed to allow these agencies until July 5, 2016 to comply with the subpoenas. At that time, Ms. Fleming advised Mr. Mahoney that the USAO might move to quash the subpoenas. Based upon the information set forth below, the Court should quash both subpoenas.

**The Subpoenas**

The subpoena issued to the Terrorist Screening Center requested:

1. All records of correspondence by any means, relating to Mr. Jabar during 2006–2010, between TSC agents or employees including Gloria Ralph McKissic and any of the Buffalo-based FBI, IRS, agents listed below (with suggested email addresses) in the time period of 2002–2009:

   Michael Klimczak – Michael.Klimczak@ci.irs.gov

---

[1] On May 27, 2016, the trial was adjourned to August 2, 2016.

Thomas Reynolds – tereynolds@fbi.sgov.gov
John Humphrey – Jhumph058@cs.com
Edward Needham – (FBI)
Angela Whitten – (FBI)

The material sought in the subpoena issued to the FBI was as follows:

Relating to Steve Jabar . . . provide the following records maintained by or originating from the FBI:

1. Any correspondence, by letter, email or otherwise, between SA John Humphrey, SA Michael Klimczak, SA Thomas Reynolds, SA Edward Needham, and any other Buffalo FBI agent or employee regarding Steve Jabar from 2002–2009.

2. Any records or documents relating to a video teleconference ("VTC" between SA Needham, SA Klimzcak, SA Reynolds, or any other Buffalo FBI agent, about the planning and completion including records or logs for the VTC which took place on September 28, 2006, in Baghdad, Iraq.

3. Any records or documents pertaining to Steve Jabar's travel with SA Humphrey and SA Maryann Rogers to Washington, D.C. from 2001–2002.

4. All record containing or referring to correspondence by any means relating to Steve Jabar, with any of the Buffalo-based FBI, IRS, agents listed below (with suggested email addresses the time period of 2002–2009:

Edward Needham – (BF FBI)
Angela Whitten – (BF FBI)
Michael Klimczak – Michael.Klimczak@ci.irs.gov
John Humphrey – Jhumph058@cs.com
William O'Connor (BF FBI)
Lawrence Robinson, Jr. (BF FBI)
Jeffrey DiQuattro (BF FBI)

## APPLICABLE LAW

### Federal Rule of Criminal Procedure 17(c)

Rule 17(c) of the Federal Rules of Criminal Procedure, which governs the issuance of subpoenas that seek the production of documents and other items in criminal cases, provides:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

It is well settled that Rule 17(c) is <u>not</u> to be used as a discovery method in criminal cases, and "'[c]ourts must be careful that Rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in Fed.R.Crim.P. 16." <u>United States v. Fernandes</u>, 115 F.Supp.3d 375, 378 (W.D.N.Y. 2015) (quoting <u>United States v. Cuthbertson</u>, 630 F.2d 139, 146 (3d Cir.1980)) (emphasis added).

"On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2) "In order to clear Rule 17(c)(2)'s 'unreasonable or oppressive' hurdle, the Supreme Court requires the subpoenaing party to show: '(1) that the documents are evidentiary and relevant; (2) that [the documents] are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that [it] cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is <u>not</u> intended as a general fishing expedition.'" <u>United States v Salvagno</u>, 267 F. Supp. 2d 249, 252 (N.D.N.Y. 2003) (footnote omitted) (internal quotation marks omitted) (quoting <u>United States v. Nixon</u>, 418 U.S. 683, 699–700 (1974)); <u>see also</u> <u>U.S. v. Soliman</u>, No. 06 CR 236A, 2008 WL 5114230 (W.D.N.Y. Nov. 25, 2008).

"In other words, under the test adopted by the Supreme Court in <u>Nixon</u>, the proponent of a subpoena returnable before trial must clear three hurdles: (1) relevancy; (2)

admissibility; (3) specificity." <u>United States v. Rajaratnam</u>, 753 F.Supp.2d 317, 320 (S.D.N.Y. 2011) (citations omitted) (internal quotation marks omitted); <u>see also</u> <u>United States v. Cuti</u>, 528 Fed.Appx. 84, 86 (2d Cir. 2013). "It is essential the documents sought <u>cannot merely be potentially relevant or admissible;</u> they must meet the test of relevancy and admissibility at the time they are sought." <u>United States v. Marchisio</u>, 344 F.2d 653, 669 (2d Cir. 1965) (emphasis added).


The subpoenas served upon the TSC and the FBI do not meet these hurdles. First, the defense has failed to show that the documents sought are evidentiary and relevant to the pending prosecution, that they are made in good faith rather than as part of a general fishing expedition, that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence and that they cannot properly prepare for trial without such production. Second, the government has already provided the defense with the materials that they are entitled to receive pursuant to Rule 16, *Brady*, *Jencks,* 3500 and *Giglio*. The government has and will continue to provide additional discovery, *Brady*, *Jencks* and 3500 material and *Giglio* materials pursuant to those obligations. The government has already provided the defense with the documents they are entitled to receive. For example, emails and reports by Agent Michael Klimczak have been marked as Government Exhibits 3500 through 3500BH.


## 18 U.S.C. § 3500 and the Jencks Act

Title 18 U.S.C. § 3500 requires the government, "on motion of the defendant," to disclose a government witness' prior statements that are in the government's possession and that relate to the subject matter of the witness' direct testimony.

(a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of <u>subpoena</u>, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

(emphasis added).

The government's disclosure obligation under *Jencks* applies to witnesses who provide live testimony for the government at trial. There is no obligation, however, to disclose 3500 material for potential witnesses whom the government does not call at trial. *See* <u>United States v. Rigas</u>, 583 F.3d 108, 125-26 (2d Cir. 2010). Items requested by the defense in the present case include records of correspondence involving some individuals who will not testify at trial including John Humphrey, William O'Connor, Lawrence Robinson, Jeffery DeQuattro and Gloria Ralph McKissic. As such, the defense is not entitled to receive such information.

## Federal Rule of Criminal Procedure 16

Rule 16(a)(2) of the Federal Rules of Criminal Procedure explicitly limits government disclosure obligations:

**Information Not Subject to Disclosure**. Except as permitted by Rule 16(a)(1)(A)-(D), (F), and (G), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. <u>Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500</u>.

(emphasis added).

Rule 16(a)(2) is consistent with the Supreme Court's interpretation of the Jencks Act. See Palermo v. United States, 360 U.S. 343, 351 (1959) ("[S]tatements of a government witness made to an agent of the Government which cannot be produced under the terms of 18 U.S.C. § 3500 ... cannot be produced at all." (emphasis added). See also United States v. McMillen, 489 F.2d 229, 230 (7th Cir. 1972) ("Rule 16(b) [now Rule 16(a)(2)] and § 3500 prohibit a district judge from ordering production of statements of Government witnesses, whether or not they are co-defendants, before they have testified.").

**Department of Justice Regulations**

With regard to subpoenas directed to the TSC & FBI, 28 C.F.R. § 16.21 governs procedures to be followed with respect to the production or disclosure of any material contained in the files of the Department of Justice.  The TSC and FBI are parts of the Department of Justice.

Federal law requires that demands to federal agencies seeking testimony or documents must comply with procedures established by the agency from which the information is sought. See United States ex rel Touhy v. Ragen, 340 U.S. 462 (1951); see also 5 U.S.C. § 301.  Federal officers may properly rely on federal regulations in refusing to supply information pursuant to a subpoena.  In Touhy, the Supreme Court upheld a Justice Department order precluding an FBI agent from producing Department papers which were in his possession.  As the Court held, a subpoenaed agency employee cannot be compelled to disobey applicable "Touhy regulations." 340 U.S. at 467–70.

With regard to the subpoenas directed to the TSC and the FBI, 28 C.F.R. § 16.23 provides general disclosure authority in federal and state proceedings in which the United States is a party. Section 16.23(a) authorizes "every attorney in the Department of Justice in charge of any case or matter in which the United States is a party, . . . to reveal and furnish to any person . . . such testimony, and relevant unclassified material, documents, or information."

> (a) In deciding whether to make disclosures pursuant to a demand, Department officials and attorneys should consider:

>> (1) Whether such disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose, and

>> (2) Whether disclosure is appropriate under the relevant substantive law concerning privilege.

Section 16.23(a) provide that, in making such disclosure, "[a]n attorney shall not reveal or furnish any material, documents, testimony or information, when, in the attorney's judgment, any of the factors specified in § 16.26(b) exist. . ." Section 16.26(b) provides that:

> (b) Among the demands in response to which disclosure will not be made by any Department official are those demands with respect to which any of the following factors exist:

>> (1) Disclosure would violate a statute, such as the income tax laws, 26 U.S.C. 6103 and 7213, or a rule of procedure, such as the grand jury secrecy rule, F.R.Cr.P., Rule 6(e),

>> (2) Disclosure would violate a specific regulation;

(3) Disclosure would reveal <u>classified</u> information, unless appropriately declassified by the originating agency,

(4) Disclosure would reveal a confidential source or informant, unless the investigative agency and the source or informant have no objection,

(5) Disclosure would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired,

(6) Disclosure would improperly reveal trade secrets without the owner's consent.

(emphasis added).


## ARGUMENT

**A.  The subpoenas directed to the TSC and the FBI should be quashed.**

    1.  <u>The defendants cannot use a Rule 17(c) subpoena to obtain impeachment materials they are not entitled to under Jencks or 3500</u>

Courts have repeatedly held that a Rule 17 subpoena should not be used to obtain materials in advance of trial that are to be used for impeachment purposes. <u>See, e.g.</u>, <u>United States v. Nixon</u>, 418 U.S. 683, 701 (1974) ("[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial."); <u>United States v. Hughes</u>, 895 F.2d 1135, 1145–46 (6th Cir.1990) (holding that district court properly quashed Rule 17(c) subpoena seeking documents to impeach government witness); <u>United States v. Cuthbertson</u>, 651 F.2d 189, 195 (3d Cir.) (holding that documents constituting hearsay which could only be used for impeachment purposes may not be obtained by a Rule 17(c) subpoena), <u>cert. denied</u>, 454 U.S. 1056 (1981); <u>United States v. Fields</u>, 663 F.2d 880, 881

(9th Cir.1981) (holding that where the only evidentiary use advanced by defendants for the use of materials sought by Rule 17(c) subpoena was for impeachment purposes, there was insufficient reason to warrant pretrial production of such documents).  The Jencks Act itself "mandates disclosure only after 'said witness has testified on direct examination in the trial of the case.'" United States v. Jackson, 345 F.3d 59, 76 (2d Cir. 2003) (citations omitted) (quoting 18 U.S.C. § 3500(a)).  The Jencks Act thus does not compel the disclosure of such material through subpoenas.  Moreover, Rule 17 itself prohibits procuring Jencks Act material through the use of a Rule 17(c) subpoena.  See Fed. R. Crim. 17(h) ("Information Not Subject to a Subpoena.  No party may subpoena a statement of a witness or of a prospective witness under this rule.  Rule 26.2 governs the production of the statement.").

In Hughes, the district court quashed the defendant's subpoena because it did not meet the requirement of relevance, admissibility and specificity. 895 F.2d 1135 at 1145–46. On appeal, the defendant argued that the documents would have been admissible for impeaching the credibility of the government's witness. Id. at 1146.  Citing Nixon, the Third Circuit affirmed the district court, noting that Nixon held that "the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." Id. (quoting Nixon, 418 U.S. at 701) (internal quotation marks omitted).

Plainly, both the TSC and FBI subpoenas do not describe specific evidentiary items sought for the intended purpose of securing evidence for trial.  Correspondence is not evidentiary in nature and will constitute 3500 materials if that individual testifies at trial. These subpoenas lack any degree of specificity and thus fail the "specificity" prong of the

Nixon test.    As in Hughes, any rationale for subpoenaing the TSC and the FBI to obtain

material for impeachment purposes is by itself not sufficient.


    2.  The subpoenas to the TSC and the FBI lack specificity and are overbroad.

       Subpoenas seeking "any and all" materials without specificity "justify the inference

that the defense is engaging in the type of 'fishing expedition' prohibited by Nixon." United

States v. Mendinveta-Ibarro, 956 F.Supp.2d 511, 513 (S.D.N.Y. 2013) (quashing subpoena

for "any and all" writings and records involving a particular witness); see also United States

v. George, 883 F.2d 1407, 1418 (9th Cir. 1989) (quashing as overbroad subpoena for

information for all bank robberies in Orange County over a seven-month period); Margoles

v. United States, 402 F.2d 450, 451 (9th Cir. 1968) (quashing as overbroad subpoena for all

equipment logs for electronic eavesdropping equipment).  In Mendinveta-Ibarro, the defense

filed a subpoena *duces tecum* requiring the NYPD to present "any and all writings and

records" related to the NYPD's contact with a particular confidential witness. 956

F.Supp.2d at 511.  The court quashed the subpoena, holding that its "any and all" language

would encompass materials that would never be admissible. Id. at 515.  The subpoena thus

lacked the requisite specificity and was therefore "'unreasonable and oppressive' as defined

by Rule 17(c)(2) and Nixon." Id.


       Like the subpoena at issue in Mendinveta-Ibarro, the subpoenas issued to the FBI

and the TSC use similarly overbroad language.  Item 1 of the FBI subpoena seeks "[a]ny

correspondence, by letter, email or otherwise," between four specified FBI agents, and "any

other Buffalo FBI agent or employee regarding Steve Jabar from 2002–2009."  Item 2 seeks

inter alia, "[a]ny records or documents" relating to a September 28, 2006 video conference. Item 3 seeks "[a]ny records or documents" pertaining to Jabar's travel with SA Humphrey and SA Maryann Rogers to Washington D.C. in 2001–2002. Finally, Item 4 seeks "[a]ll records containing or referring to correspondence by any means relating to Steve Jabar" with seven designated IRS or FBI agents in the seven-year period between 2002 and 2009. Similarly, the TSC subpoena asks for "all records and correspondence by any means, relating to Mr. Jabar during 2006–2010, between TSC agents or employees . . .and any of the Buffalo-based FBI, IRS, agents listed below in the time period of 2002–2009." Both subpoenas seek correspondence far in excess of the time frame of the Indictment from beginning in or about June 2004 through in or about July 2006.

Furthermore, the FBI subpoena as written is inconsistent on its face. It variously seeks "[a]ll records . . . relating to Mr. Jabar during 2006–2010" and "[a]ll records . . . in the time period of 2002–2009." Such an incoherent request lacks specificity on its face and thus fails the "specificity" prong of the Nixon test.

3.   Defendant has failed to demonstrate that the documents sought from the TSC and FBI is relevant and admissible.

Items sought pursuant to a Rule 17 subpoena must also be admissible as evidence at trial. See Bowman Dairy Co. v. United States, 341 U.S. 214, 220 (1951) ("It was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms."); United States v. Murray, 297 F.2d 812, 821 (2d Cir. 1962) (observing that subpoenaed materials must themselves be admissible); United States

v. Barnes, 560 Fed.Appx. 36, 39 (2d Cir. 2014) ("Rule 17 subpoenas are properly used to obtain admissible evidence, not as a substitute for discovery.")

The defendant has not shown that the sought documents are admissible or relevant. In Barnes, the defendant issued subpoenas to the Bureau of Prisons for housing assignments, visitor logs, and telephone and email records of prison inmates. Id. When pressed for a showing of why these materials were admissible, the defendant "proffer[ed] only speculation that inmates cooperating with the government were conspiring to testify falsely against him and that the subpoenaed materials would so demonstrate." Id. The Second Circuit "easily "conclude[ed]" that the defendant "failed to make a [showing of admissibility or relevance]."

Like the defendant in Barnes, the defense has made no showing that the materials sought are admissible or relevant. Indeed, because of the unduly vague terms of these subpoenas, the defense is hoping to find something impeaching or otherwise "useful" to the defense. This is exactly the sort of "fishing expedition" prohibited by Rule 17 and Nixon.

   4.   The timeframe of defendant's subpoenas bear little relationship to the subject of the investigation.

The period of time for which the records are sought in a subpoena should bear some relationship to the subject of the investigation. In re Grand Jury Supoena Duces Tecum Addressed to Provision Salesmen and Distributors Union, Local 627, AFL-CIO, 203 F.Supp. 203 F. Supp. 575, 578 (S.D.N.Y. 1961) (discussing proper scope of grand jury subpoena under the Fourth Amendment); see also United States v. Salvagno, 267 F. Supp.

at 253.  In <u>Salvagno</u>, the defense subpoenaed a company's Custodian of Records seeking a broad range of documents dating from 1990 to 2003.  The court noted that this time frame exceeded the conduct charged in the indictment, which ran from Fall of 1995 through 1996.  <u>Id.</u>  The court ultimately concluded that the subpoena was "unreasonable, oppressive, and over-broad."  <u>Id.</u>  Like the subpoena at issue in <u>Salvagno</u>, the TSC and FBI subpoenas have a similarly overbroad time frame.  The subpoenas call for documents beginning in 2002 through 2009 despite the fact that the defendants are charged with conduct that occurred in or about June 2004 to in or about July 2006.  Furthermore, this case has nothing to do with any information sought in Item 3 of the FBI subpoena relating to any travel by defendant Jabar in 2001-2002, well before the conduct charged in the Indictment.


Because the defense has failed to show how the time frame sought of these documents bears any relevance to the charges in the Indictment, the defense should not be allowed to go on a fishing expedition.


## CONCLUSION

Given the lack of specificity of the documents sought, the overbroad time frame listed in the subpoenas, the attempt to circumvent 18 U.S.C. 3500 and Rule 16, the failure to show relevance and admissibility at trial, and that fact that some of the items sought are classified documents which the Touhy regulations prohibit disclosure,  the subpoenas issued

14

to the TSC and the FBI must be quashed.  For the reasons set forth above, the government respectfully requests that the Court quash the subpoenas served on the TSC and FBI.


       DATED:  Buffalo, New York, July 5, 2016.


                     WILLIAM J. HOCHUL, JR.
                     United States Attorney


          BY:    s/ MARIE P. GRISANTI
                 Assistant United States Attorney
                 United States Attorney's Office
                 Western District of New York
                 138 Delaware Avenue
                 Buffalo, New York 14202
                 716/843-5818
                 Marie.Grisanti@usdoj.gov


          BY:    s/ MARYELLEN KRESSE
                 Assistant United States Attorney
                 United States Attorney's Office
                 Western District of New York
                 138 Delaware Avenue
                 Buffalo, New York 14202
                 (716) 843-5888
                 MaryEllen.Kresse@usdoj.gov


TO:   Mark Mahoney, Esq.
       Patrick Brown, Esq.